```
                    IN THE UNITED STATES DISTRICT COURT

                    IN AND FOR THE DISTRICT OF DELAWARE

                                   - - -

UNITED STATES OF AMERICA,        :    CRIMINAL ACTION
                                 :
          Plaintiff,             :
                                 :
          v.                     :
                                 :
PATRICK TITUS,                   :
                                 :
          Defendant.             :    NO. 18-45-RGA

                                   - - -

                          Wilmington, Delaware
                          Friday, July 16, 2021
                          Jury Trial - Volume VIII

                                   - - -

BEFORE:    HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

                                   - - -

APPEARANCES:


           UNITED STATES ATTORNEY'S OFFICE
           BY:  EDMOND FALGOWSKI, ESQ.,
           Assistant United States Attorney

                and

           U.S. DEPARTMENT OF JUSTICE - CRIMINAL DIVISION
           BY:  ALEZA S. REMIS, ESQ.,
                CLAIRE SOBCZAK, ESQ., and
                JUSTIN M. WOODARD, ESQ.
           United States Trial Attorneys
           (Washington, District of Columbia)

                    Counsel for Government


                                      Brian P. Gaffigan
                                      Registered Merit Reporter
```

```
1   APPEARANCES:  (Continued)

2

3              OFFICE OF THE FEDERAL PUBLIC DEFENDER
               BY:  ELENI KOUSOULIS, ESQ.
4              Acting Federal Public Defender

5                   and

6              THE BOSTIC LAW FIRM
               BY:  EDSON BOSTIC, ESQ.
7                   (Philadelphia, Pennsylvania)

8                        Counsel for Defendant

...

22                          - oOo -

23                      P R O C E E D I N G S

24              (REPORTER'S NOTE:  The following jury trial was
25   held in open court, beginning at 11:30 a.m.)
```

1       THE COURT:  All right.  Good morning, everyone.
2   Please be seated.
3       So I e-mailed out the proposed jury instructions
4   as of this date yesterday evening.  I also mailed out the
5   jury verdict form.  And I guess I'd like to know if there is
6   any objections, corrections, comments, suggestions?
7       One of the things that I -- I did have three
8   things myself that were basically questions.  I may have
9   more than three that were questions, but there were three I
10  wanted to bring up, one of which is on page 7.  I have an
11  instruction for "On Or About."
12      That doesn't seem to me to be like actually an
13  issue in this case.  I'm just wondering do you all want that
14  instruction?
15      MS. KOUSOULIS:  It doesn't matter to the
16  defense, Your Honor.
17      MS. REMIS:  Same with the government, Your
18  Honor.
19      THE COURT:  Okay.  Well, then that one is gone.
20      On page 12, the Law Enforcement instruction, I
21  guess I heard it from Agent Smith and Agent McDonald, and I
22  guess the undercover police officer from the University of
23  Delaware.  I'm happy to give this instruction.  Does the
24  defense want it?
25      MR. BOSTIC:  Your Honor, we will leave it in.

1           MS. KOUSOULIS:  Yes.

2           THE COURT:  Okay.  All right.  And then on page

3  13, The Credibility of Witnesses, the Testimony of Addicts

4  or Substance Abuser.

5           We wrote this before the defense witnesses

6  testified yesterday, whose names I forget, who -- and so I'm

7  just not sure whether it actually matters to anyone about

8  the testimony of any of these people or whether, you know,

9  it's going to be at issue that they were taking these

10  various drugs and some of them overdosing on drugs.

11           If either side wants it in, I'm perfectly happy

12  to keep it in.  I was thinking that rather than start to

13  name everyone who actually testified as to using some drug

14  at some point, it would be better to just change it to a

15  generic thing:  Evidence was introduced during the trial

16  that some of the witnesses were using drugs when the events

17  they testified about took place.

18           So what do you all think?

19           MS. REMIS:  The government would -- I don't

20  think we need it, Your Honor.  It doesn't seem to me like

21  the cross-examination of either the defense or the

22  government's witnesses who are former patients are focused

23  on their lack of memory as a result of their drug use.  And

24  it sort of like equals out in terms of the patients that we

25  call, the patients that they call, but that would just be

1  our perspective, Your Honor.

2              MR. BOSTIC:  Your Honor, we would ask that it be

3  left in.  I think the Court is right to the extent that we

4  have people testify that had substance abuse problems, and

5  it's a matter of credibility, and it's a matter of the jury

6  to take that.

7              THE COURT:  So if I change it instead of naming

8  these people, just say "some of the witnesses"?

9              MS. KOUSOULIS:  That's fine, Your Honor.

10             MR. BOSTIC:  "Some of the witnesses."  That's

11 fine, Your Honor.

12             MS. KOUSOULIS:  While we're on this type of

13 instruction --

14             THE COURT:  Hold on.  Let me just write that

15 down.

16             All right.  Yes, Ms. Kousoulis.

17             MS. KOUSOULIS:  Your Honor, I believe it was

18 Brent Hood I did introduce, ask him and he agreed he had

19 certain convictions for criminal falsity type of

20 convictions, and I can provide the Court with that type of

21 instruction.  So we would ask that that instruction be given

22 because it goes to his credibility in terms of there is

23 evidence in the record that he had certain convictions that

24 would tend to, you know, if the jury could consider that

25 when considering his credibility.  And if the Court would

1 like, I would provide that instruction.
2              THE COURT: I'm pretty sure I can find that
3 instruction without too much effort.
4              And what was his criminal falsity? Was it
5 theft?
6              MS. KOUSOULIS: I believe it was theft and
7 burglary.
8              THE COURT: All right. So that's what I have.
9              I will start with the government. Do you have
10 any objections to any of this?
11             MS. REMIS: We have no objections, Your Honor.
12 We have just go very small nits.
13             THE COURT: Okay. Tell me your nits.
14             MS. REMIS: Okay. On page 15, the second
15 paragraph of the page, it states the patients, the
16 approximate dates, blah blah blah, and then the last word is
17 "instructions." I think it should just be "instruction."
18             THE COURT: Okay.
19             MS. REMIS: And then --
20             THE COURT: Okay. All right. Maybe it was
21 originally, it was either these instructions or this
22 instruction but, sure, we can do that. Yes.
23             MS. REMIS: And even a pickier nit, Your Honor.
24             THE COURT: Okay.
25             MS. REMIS: On the second page of the jury

1  verdict, just for consistency, Counts 1 through 14 are
2  underlined, but Count 15 is not underlined.
3              THE COURT:  Okay.
4              MS. REMIS:  In case we have any jurors who are
5  like editors or something like that.
6              THE COURT:  No, no.  I agree.  Part of what,
7  just generally speaking, what I was trying to do yesterday
8  was harmonize these instructions.  Presumably, you will
9  notice, and I changed some things around and I was trying
10 to make them internally consistent, and so things like
11 underlining one thing but not underlining another I agree
12 there is no reason for, you know, because some juror will
13 notice that and wonder what is the message here?  So thank
14 you, I have no problem with that.
15             So defendants, what do you think?
16             MS. KOUSOULIS:  We have a couple bigger ones.
17             First, Your Honor, with regard to the good faith
18 defense.
19             You know, we, you know, yesterday, and I believe
20 yesterday or two days ago, the Court even indicated like
21 when the defense -- when the government was objecting --
22 like what was the harm in including it, and the government
23 even agreed there was no harm.  And they suggested perhaps
24 it should be maybe just included language in the "knowingly
25 or intentionally" defined, and they added language.

1        And then, Your Honor, which we still objected

2   to because we thought like the good faith defense is a

3   recognized defense in terms of, you know, it's given, you

4   know, in these cases, prescription, prescribing cases.  It

5   has been given in this District even in this court, you

6   know, in the Esham case, I would think there is evidence of

7   it.

8        And even in the Court's instruction, it kind of

9   was watered down more what the government even offered and

10  it doesn't even have a defense.

11       THE COURT:  Well, part of the problem, the

12  problem with what the government offered was it didn't get

13  to the point you were trying to make.  They didn't have, you

14  know, your suggestion and your proposal was, the key

15  sentence was:  "Thus, in this case, Dr. Titus made an honest

16  mistake about a patient's medical needs and he did not act

17  knowingly or intentionally."  That was the heart of your

18  good faith instruction.

19       MS. KOUSOULIS:  Well, then, Your Honor, we would

20  ask that maybe that sentence, if the Court is going to add

21  to what the government proposed, if the Court is not going

22  to give the actual Third Circuit model instruction, because

23  in the instruction that the Court is proposing, it doesn't

24  use the term "good faith," it doesn't state even a defense.

25       THE COURT:  And so let me -- well, first off,

1     finish your statement.

2               MS. KOUSOULIS:  I was going to say, I think, you

3     know, in light of the facts of this case, in light of what

4     even the defendant's theory and defense is, I'm not even

5     sure, when you look at what is proposed, if it even -- we

6     just believe that the good faith instruction is warranted in

7     this case.

8               And when it comes to some kind of compromise, I

9     think the government's version of adding that sentence,

10    again, it doesn't even state like what is being proposed, it

11    doesn't state the complete defense, it doesn't state -- it

12    doesn't use the term "good faith", it doesn't, you know,

13    there is a lot like missing and lacking from what was even

14    in the Third Circuit model instruction.

15              THE COURT:  All right.  Well, so let me put on

16    the record what I was thinking, which is this:

17              In the circumstances of this case, as I

18    understand what the defense was proposing, the good faith is

19    just a mirror image of what the government has to prove in

20    terms of knowledge.  And I think the good faith instruction

21    is, when it's a mirror image, is at best confusing and at

22    worst superconfusing because it basically puts in a whole

23    bunch of different terminology and says it's a defense, but

24    it's not a defense that the defendant has to prove because

25    you don't have the burden of proof.

1                And so I tried to make it so that what I got

2     from what you submitted as to what you were saying was the

3     thing that the government can't show beyond a reasonable

4     doubt is that whatever Dr. Titus did, they were just honest

5     mistakes, and so that's the reason why I took it out.  I

6     thought it was confusing and unnecessary.

7                MS. KOUSOULIS:  Well, Your Honor, in terms of

8     even what Dr. Daley testified to, the evidence we plan to

9     present with Dr. Warfield on Monday broadened it and even

10    goes beyond just that one sentence.  And I believe like that

11    was just a mistake, and again we just feel that, I guess I

12    respectfully disagree.  I think the good faith language kind

13    of makes it more clear for the jury, you know, and less

14    confusing.  Like I almost think without the additional

15    language, it's a little more confusing in my opinion.

16               THE COURT:  All right.  Does the government have

17    anything to say about this?

18               MS. REMIS:  No, Your Honor.  I suppose that,

19    depending on Dr. Warfield's testimony, we would be amenable

20    to rediscussing it, but our position is that what the Court

21    added here makes clear what they were arguing for the other

22    day.  And, you know, we think it properly incorporates the

23    essence of the good faith defenses or "defense".

24               THE COURT:  So I'm going to at least right now

25    stay with what I've got here, but certainly after we heard

```
1    Dr. Warfield testify, we can discuss it some more.  Okay?
2              MS. KOUSOULIS:  That's fine, Your Honor.
3              THE COURT:  What else?
4              MS. KOUSOULIS:  Your Honor, the verdict sheet.
5    We would object to the verdict sheet.  I think it invites
6    the jury to not consider each count separately.  The jury is
7    instructed each count is separate.  They're to consider the
8    evidence for each count separately.  It's not like if they
9    find him guilty of Count 1, that means guilty of all 13,
10   because the evidence for each is separate in terms of how we
11   treated each patient, and Dr. Dr. Titus interacted with each
12   patient, and what he did for each patient is separate.
13             And I think this kind of invites the jury, it's
14   sort of like a score sheet, just kind of like check the
15   boxes, and it kind of lumps it together.  And I think it's
16   hard enough in cases where there is multiple counts to
17   consider separately to get the jury to focus on considering
18   each count separately with regard to that particular, you
19   know, information.  And so I think it can be prejudicial to
20   Dr. Titus.
21             And moreover, in this particular case, the
22   government has used several demonstrative evidence of
23   charts, maybe they don't have the exact words but where they
24   have counts of the indictment, the patient's name, dates,
25   and they have boxes that they're checking.  And I'm assuming
```

1    they're going to use charts like that in their closing.  And
2    so I think, you know, in this case in particular, given what
3    the evidence has been and given the government's theory how
4    they're presenting, it is more, even more prejudicial to Dr.
5    Titus.
6                And I guess in this particular case, the parties
7    have agreed on a verdict sheet, and I know the Court has
8    had some concerns and so it was sort of changed.  But even
9    yesterday, the government indicated, you know, a problem
10   with the original verdict sheet.
11               So I guess I'm not sure.  You know, I don't
12   think the original verdict sheet was overly cumbersome or
13   overly lengthy.  So I think out of an abundance of caution,
14   to make the jury is considering each count separately, that
15   the original verdict sheet as written be provided.
16               THE COURT:  All right.  The government, what do
17   you have to say about that?
18               MS. REMIS:  Just briefly, Your Honor.
19               I think, I am just looking at the verdict form
20   instruction that's on the last page of the instruction.  And
21   it seems to me that if, maybe out of an abundance of
22   caution, if the Court just added a sentence that said
23   something like, you know, each count should be considered on
24   its own?
25               THE COURT:  Don't I already have that?

1  MS. KOUSOULIS: Your Honor, I believe, I believe
2  you do. But I still think people are visual, and I still
3  think like saying that and providing them the verdict sheet
4  as proposed is two different things.
5  THE COURT: So page 14.
6  MS. REMIS: I'm sorry, Your Honor.
7  THE COURT: Each defense is charged in a
8  separate count of the indictment. The number of offenses,
9  blah blah blah. You have, it relates to each offense. You
10  must return a separate verdict for each offense. For each
11  offense charged, you must decide what the government has
12  proved beyond a reasonable doubt that Dr. Titus is guilty of
13  that particular offense. Your decision on ...
14  Now, I could take a separate consideration and
15  move that --
16  MS. REMIS: To the end? (Nodding yes.)
17  THE COURT: -- to follow the verdict form
18  instruction.
19  MS. KOUSOULIS: Your Honor, I still don't think
20  that is going to solve the problem. Again, people are
21  visual. They're going to remember the charts. They're
22  going to remember -- you know, I'm not sure how much, you
23  know, weight that is going to have or how much effect that
24  is going to have. And we would -- again, I think it's going
25  to be prejudicial, and I'm not sure -- you know, I'm seeing

1     the harm in making -- just to make sure, out of an abundance

2     of caution, they consider each count separately, separating

3     out the counts like they were in the original proposed

4     verdict sheet.

5                THE COURT:  All right.  So you were saying

6     "abundance of caution."  What do you say now?

7                MS. REMIS:  For the government?

8                THE COURT:  Yes.  Sorry.  Ms. Remis.

9                MS. REMIS:  Well, I think to, in response to

10    Ms. Kousoulis's objection, I think the likelihood of using

11    this other score sheet is equal as to guilty and not guilty.

12    They're right next to each other.  There is no reason why

13    the defense can't use a demonstrative such as this, should

14    they choose to.  And Your Honor pointed out yesterday that

15    a table like this sort of streamlines it for the jury as

16    opposed to -- and I think whatever we can do to make things

17    clear for the jury, one way or the other.

18                THE COURT:  So, you know, my -- I'm sorry to

19    interrupt.

20                MS. REMIS:  No, you.

21                THE COURT:  No.

22                MS. REMIS:  No, you, Your Honor.

23                THE COURT:  Okay.  Well, so I don't actually

24    buy what Ms. Kousoulis is saying.  But on the other hand,

25    because I don't think it makes any difference, I'll do the

1    long form.
2             MS. KOUSOULIS:  Thank you, Your Honor.
3             THE COURT:  So we will take this and correct
4    whatever things we need in the long form but we'll do the
5    long form.  You know, maybe, I don't think it will, I'm
6    pretty confident it won't.  Jurors take these things
7    seriously.  They don't say, oh, put a line down and put an
8    arrow at the end on one column or the other.
9             But in any event, I will do it.
10            What else do you have, Ms. Kousoulis.
11            MS. KOUSOULIS:  Nothing else for defense, Your
12   Honor.
13            THE COURT:  All right.
14            MS. REMIS:  One other quick thing on the verdict
15   form.
16            I believe on the other verdict form that we
17   originally had, I noticed the Court took out the statutory
18   references here which I think makes it simpler.
19            THE COURT:  Well, the jury will have no idea
20   what the statutory references are.
21            MS. REMIS:  That's what I'm going to say.  If
22   we're going back to the long form, we request we strike the
23   statutory references.
24            MS. KOUSOULIS:  That's fine for defense.
25            THE COURT:  Yes, that was going to happen

1    regardless.

2            MS. REMIS:  Thank you, Your Honor.

3            THE COURT:  Okay.  Well, as I said, or as I at
4    least indicated, the one remaining objection about good
5    faith, we can, we can discuss that some more after we hear
6    the testimony on Monday, but otherwise, if somebody spots
7    something you should bring it up, but otherwise I will have
8    very limited discussion on Monday after the close of
9    evidence, assuming we get to the close of evidence on
10   Monday.

11           MS. KOUSOULIS:  I believe we will, Your Honor.

12           THE COURT:  All right.  I was going to say are
13   you going to have your two witnesses who are not
14   Dr. Warfield around.

15           MS. KOUSOULIS:  Yes.  Yes.  And so, yes, we
16   don't anticipate, unless the government spends the whole day
17   crossing Dr. Warfield.

18           THE COURT:  Well, I'm thinking, I don't always
19   remember everybody said, but I think Mr. Woodard said
20   something like, oh, maybe an hour.

21           So he's not proved to be 100 reliable on these
22   things, but he would have to be, if you aren't reliable on
23   what you said with your direct, he would have to be
24   off-the-scales unreliable to cause us a problem.

25           MR. WOODARD:  Fair enough.

| | |
|---|---|
| 1 | THE COURT: I'm thinking he won't be. |
| 2 | Okay. If there is nothing else, have a nice |
| 3 | weekend, and I will see you Monday morning at 9:00 so that |
| 4 | if there is any anticipated issues with Dr. Warfield's |
| 5 | testimony, we can discuss it and try to resolve it before it |
| 6 | happens, okay? |
| 7 | MS. KOUSOULIS: Thank you, Your Honor. |
| 8 | MS. REMIS: Thank you, Your Honor. |
| 9 | THE COURT: All right. Have a good weekend. |
| 10 | (Proceedings adjourn at 11:50 a.m.) |
| 11 | |
| 12 | I hereby certify the foregoing is a true and accurate |
| 13 | transcript from my stenographic notes in the proceeding. |
| 14 | /s/ Brian P. Gaffigan |
| 15 | Official Court Reporter |
| | U.S. District Court |