2000

1                  IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF DELAWARE

3

4    UNITED STATES OF AMERICA,    )
                                  )
5              Plaintiff,         )
                                  ) Criminal Action No. 18-45-RGA
6    v.                           )
                                  ) Trial Volume XI
7    PATRICK TITUS,               )
                                  )
8              Defendant.         )

9
                                       J. Caleb Boggs Courthouse
10                                     844 North King Street
                                       Wilmington, Delaware
11
                                       Wednesday, July 21, 2021
12                                     11:40 a.m.
                                       Jury Trial
13

14   BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

15   APPEARANCES:

16              U.S. DEPARTMENT OF JUSTICE - CRIMINAL DIVISION
                BY:  ALEZA S. REMIS, ESQUIRE
17              BY:  CLAIRE SOBCZAK, ESQUIRE
                BY:  JUSTIN WOODARD, ESQUIRE
18
                                       For the Plaintiff
19

20              OFFICE OF THE FEDERAL PUBLIC DEFENDER
                BY:  ELENI KOUSOULIS, ESQUIRE
21
                         -and-
22
                THE BOSTIC LAW FIRM
23              BY:  EDSON A. BOSTIC, ESQUIRE

24                                     For the Defendant

25

```
 1                    ***  PROCEEDINGS  ***

 2              DEPUTY CLERK:  All rise.

 3              THE COURT:  All right.  Have a seat.  So we have

 4    a first note from the jury.  It reads "Your Honor, we

 5    request the transcription of Dr. Thomas."  And it was sent

 6    approximately 25 minutes ago.

 7              So the request is pretty clear.  What's the

 8    Defendant's position?

 9              MS. KOUSOULIS:  Your Honor -- oh, sorry.  We

10    would object to that.  We believe the jury should rely on

11    the recollection of the testimony, as in all trials.  If

12    there's a portion of the testimony they want read back, you

13    know, that happens, and they should be instructed as such.

14    Not only Dr. Thomas' testimony, but if they are instructed

15    in that fashion to say if there's any testimony they want

16    read back, you know, that can be done, but I don't think

17    it's appropriate to give them the transcript, you know, of

18    one witness.

19              THE COURT:  All right.  What's the Government's

20    position?

21              MS. REMIS:  Your Honor, we just did a little bit

22    of case law research, and it looks like the case that

23    governs is United States vs. Bertoli.  It's a two --

24              THE COURT:  Yeah, yeah.

25              MS. REMIS:  So you're -- not surprisingly, the
```

1    Court is on it already.

2              THE COURT:  Well, it is surprising, but this

3    happens to be an area that I have some experience with.

4              MS. REMIS:  So in that case, Your Honor, I won't

5    restate what the case law says.  We would just simply defer

6    to the Court's discretion which is apparently what the Third

7    Circuit recommends with a few cautions, but it sounds like

8    it's within the Court's discretion to either read back or

9    the Court provide the jury with the transcript.  But either

10   way, if the Court decides that, we would request just an

11   instruction that, you know, the recollection should not be

12   tainted by the, you know, transcript, if they recall

13   something differently or, you know, something along those

14   lines.

15             THE COURT:  All right.  You know, even though

16   I'm familiar with the case law, it doesn't come up that much

17   in this district because of Footnote Number 9 because

18   usually we don't have a transcript.  But I'm advised by my

19   court reporter that, in fact, there is a transcript of the

20   entire trial in existence.

21             Right?  That's the parties' understanding?

22             MS. REMIS:  Yes, Your Honor.

23             MS. KOUSOULIS:  Yes, Your Honor.

24             THE COURT:  And you know, it's hard to say.  One

25   can make guesses about why there's a request for this or

1     that.

2               You know, Dr. Thomas testified for roughly seven

3     hours and so the transcript is, you know, at least a couple

4     hundred pages.  And you know, it is in writing.  And as the

5     Court in Bertoli noted, there can be dangers in giving

6     written trial transcripts that are not present when the

7     Trial Court reads portions of the transcripts to the jury.

8               You know, here, I am concerned, though, as I

9     said, I don't want to speculate about what the jury has in

10    mind.  I am concerned about giving the transcript of the

11    Government's expert and not giving them the Defendant's

12    expert.

13              MS. REMIS:  Your Honor --

14              THE COURT:  Yes.

15              MS. REMIS:  -- if I -- just a suggestion.  If

16    the Court is inclined in any way to provide either the

17    transcript or to read it back, we could always inquire, if

18    this would be proper, like if there's a specific issue that

19    there's a dispute about, and then identify the direct and

20    the cross that relates to that.  But you know, that's just a

21    suggestion, Your Honor, if you're inclined to even go there.

22              THE COURT:  Hold on just a minute.  There's

23    something I want to check.

24              What do you think about that last suggestion,

25    Ms. Kousoulis?

1            MS. KOUSOULIS:  Your Honor, are you saying in

2     terms of asking the jury if there's specific --

3            THE COURT:  Well, in other words, what I took to

4     be the last suggestion, maybe it's good that I state what I

5     think it is just to make sure that we're on the same page,

6     which is I took it to be saying that I would say, no, I'm

7     not going to give you the transcript of the entire

8     testimony, but if there's, you know, some particular portion

9     of the testimony or some particular -- well, I guess some

10    particular portion of the testimony that -- well, actually,

11    I'm not entirely sure how I would ask that.

12           MS. KOUSOULIS:  That would be our only concern

13    is that are we then injecting too much into their

14    deliberations by asking that.  I mean, if there was a way to

15    do it with -- you know, I'm not sure how we would exactly

16    phrase the question without --

17           THE COURT:  Yeah, yeah.

18           MS. KOUSOULIS:  -- making them think that we're

19    thinking too much and having them put too much thought about

20    why we're asking in that sense.  Unless it's a more -- I

21    mean, I know -- again, I've been in trials where testimony,

22    specific testimony that they request initially, you know, is

23    read back unless, you know, Your Honor, just tells them

24    that, you know, we can't provide them with transcripts of

25    any testimony, you know, but --

1              THE COURT:  Well, so of course, one of the

2    things when you're reading things back, you know, if they

3    ask for me to read back seven hours of testimony, I would

4    say no, because I think --

5              MS. KOUSOULIS:  Correct.

6              THE COURT:  -- that falls within, pretty

7    significantly one of the things Bertoli says about reading

8    back which is, you know, it may slow the trial where

9    requested testimony is lengthy.  I mean, that's it.

10             So you know, I'd ask them to read back the

11   testimony which, of course, you know, long ago, I mean, I've

12   seen court reporters sit there, you know, actually reading

13   it back.  You know, you could do 15 minutes, maybe more,

14   30 minutes, but you can't do seven hours.

15             So if that's where we were, I would deny it

16   on -- I would not read back seven hours of testimony.

17             MS. KOUSOULIS:  So in that regard, Your Honor, I

18   think that, you know, the Defense's recommendation or

19   preference would be to just tell the jury to just rely on

20   their recollection of the testimony.

21             THE COURT:  All right.  So because I would deny

22   the request for the reading back and because I think that

23   taking seven hours of testimony, which I'm sure we could

24   take and edit out whatever side-bars, or objections, or

25   other things are in there, but it would still be a hugely

1    lengthy document that basically summed up the Government's

2    case.  I am very reluctant to just give it to the jury, so

3    I'm going to not give it to the jury.

4              And that leads to the next question which is

5    exactly what I'm going to tell the jury.  And you know, let

6    me write down something here.

7              All right.  So here's what I'm thinking of

8    saying.  Members of the jury, I received your note which

9    said blah, blah, blah.  There are rules about when I can and

10   cannot give a jury a transcript of testimony.  Under my

11   interpretation of the rules, I am not going to give you a

12   transcript of Dr. Thomas' testimony.  You must rely upon

13   your own memory of what Dr. Thomas said, just as you must

14   with what all the other witnesses said.

15             MS. KOUSOULIS:  That's fine with the Defense,

16   Your Honor.

17             MS. REMIS:  No objection, Your Honor.

18             THE COURT:  All right.  Let's get the jury.

19             (Jury entering the courtroom.)

20             THE COURT:  Good morning.  Yeah, good morning,

21   members of the jury.  Everyone, you may be seated.

22             So members of the jury, I received the note,

23   three-quarters of an hour ago that said and I quote, "We

24   request the transcription of Dr. Thomas."

25             There are rules about when I can and cannot give

a jury a transcript of testimony. Under my interpretation of the rules, I'm not going to give you a transcript of Dr. Thomas' testimony. You must rely upon your own memory of what Dr. Thomas said, just as you must with what all the other witnesses said.

So can we take the jury back?

THE JUROR: Okay. Thank you.

(Jury leaving the courtroom.)

THE COURT: All right. Well, thank you. We'll be in recess until further notice.

DEPUTY CLERK: All rise.

(Recess was taken.)

DEPUTY CLERK: All rise.

THE COURT: All right. So I'm advised that we have a verdict, so we'll get the jury and see what the verdict is.

(Jury entering the courtroom.)

THE COURT: Thank you. Members of the jury, you may sit down, and everyone else, you may sit down.

Members of the jury, or Mr. Foreperson, I understand that you've reached a verdict; is that correct?

THE JUROR: We have, Your Honor.

THE COURT: And can you hand that up to the deputy clerk, please?

THE JUROR: I will.

1            THE COURT:  All right.  So I'm going to give the

2   verdict to the deputy clerk who's going to do what lawyers

3   call publish the verdict which means she's going to read it

4   out loud.

5            And members of the jury, if you could listen

6   very carefully because it is possible that after she reads

7   the verdict, you will be polled which means asked

8   individually:  Do you agree with the verdict as read?

9            Okay?  So can we publish the verdict?

10           DEPUTY CLERK:  Okay.  As to Count 1, charging

11   the Defendant with distributing and dispensing outside the

12   usual course of professional practice and not for a

13   legitimate medical purpose a prescription written to Brent

14   Hood for Methadone and Oxycodone, both a Schedule II

15   controlled substance, on August 7th, 2013, we unanimously

16   find the Defendant guilty.

17           As to Count 2 charging the Defendant with

18   distributing and dispensing outside the usual course of

19   professional practice and not for a legitimate medical

20   purpose a prescription written to Scott Jones for Oxycodone,

21   a Schedule II controlled substance, on September 19th, 2013,

22   we unanimously find the Defendant guilty.

23           As to Count 3 charging the Defendant with

24   distributing and dispensing outside the usual course of

25   professional practice and not for a legitimate medical

1    purpose a prescription written to Delores Perry for Morphine

2    and Oxycodone, both a Schedule II controlled substance, on

3    October 16th, 2013, we unanimously find the Defendant

4    guilty.

5              As to Count 4, charging the Defendant with

6    distributing and dispensing outside the usual course of

7    professional practice and not for a legitimate medical

8    purpose a prescription written to Maryjane Mench for

9    Oxycodone and Oxycontin, both a Schedule II controlled

10   substance, on December 9th, 2013, we unanimously find the

11   Defendant guilty.

12             As to Count 5 charging the Defendant with

13   distributing and dispensing outside the usual course of

14   professional practice and not for a legitimate medical

15   purpose a prescription written to Dione Dickerson for

16   Morphine and Oxycodone, both a Schedule II controlled

17   substance, on December 18th, 2013, we unanimously find the

18   Defendant guilty.

19             As to Count 6 charging the Defendant with

20   distributing and dispensing outside the usual course of

21   professional practice and not for a legitimate medical

22   purpose a prescription written to Lisa Parsons for

23   Oxycodone, a Schedule II controlled substance, on

24   January 20th, 2014, we unanimously find the Defendant

25   guilty.

1          As to Count 7 charging the Defendant with

2     distributing and dispensing outside the usual course of

3     professional practice and not for a legitimate medical

4     purpose a prescription written to Gregg Smith for Fentanyl

5     and Oxycodone, bot a Schedule II controlled substance, on

6     April 3rd, 2014, we unanimously find the Defendant not

7     guilty.

8          As to Count 8 charging the Defendant with

9     distributing and dispensing outside the usual course of

10    professional practice and not for a legitimate medical

11    purpose a prescription written to Donald Meck for Fentanyl

12    and Oxycodone, both a Schedule II controlled substance, on

13    April 22nd, 2014, we unanimously find the Defendant guilty.

14         As to Count 9 charging the Defendant with

15    distributing and dispensing outside the usual course of

16    professional practice and not for a legitimate medical

17    purpose a prescription written to Loretta Connelly for

18    Oxycodone, a Schedule II controlled substance, on June 12th,

19    2014, we unanimously find the Defendant guilty.

20         As to Count 10 charging the Defendant with

21    distributing and dispensing outside the usual course of

22    professional practice and not for a legitimate medical

23    purpose a prescription written to Chasity Calhoun for

24    Oxycodone and Oxycontin, both a Schedule II controlled

25    substance, on July 16th, 2014, we unanimously find the

1     Defendant guilty.

2              As to Count 11 charging the Defendant with

3     distributing and dispensing outside the usual course of

4     professional practice and not for a legitimate medical

5     purpose a prescription written to Tracie Owens for

6     Oxycodone, a Schedule II controlled substance, on July 22nd,

7     2014, we unanimously find the Defendant guilty.

8              As to Count 12 charging the Defendant with

9     distributing and dispensing outside the usual course of

10    professional practice and not for a legitimate medical

11    purpose a prescription written to Michael Adams for

12    Oxycodone and Oxycontin, both a Schedule II controlled

13    substance, on September 24th, 2014, we unanimously find the

14    Defendant guilty.

15             As to Count 13 charging the Defendant with

16    distributing and dispensing outside the usual course of

17    professional practice and not for a legitimate medical

18    purpose a prescription written to Lucille Moody for Fentanyl

19    and Oxycodone, a Schedule II controlled substance, on

20    October 27th, 2014, we unanimously find the Defendant

21    guilty.

22             As to Count 14 charging the Defendant with

23    distributing and dispensing outside the usual course of

24    professional practice and not for a legitimate medical

25    purpose a prescription written to Melissa Silbereisen, for

1   Oxycodone, a Schedule II controlled substance, on

2   October 30th, 2014, we unanimously find the Defendant

3   guilty.

4            As to Count 15 charging the Defendant, Patrick

5   Titus, with maintaining a place known as Lighthouse Internal

6   Medicine located at 10-12 North Church Street, Milford,

7   Delaware for the purpose of distributing Schedule II

8   controlled substances outside the usual course of

9   professional practice and without a legitimate medical

10  purpose, we unanimously find the Defendant guilty.

11           THE COURT:  Thank you.

12           All right.  Are there any requests to poll the

13  jury?

14           MR. BOSTIC:  Yes, Your Honor.  We ask that the

15  jurors be individually polled at this time.

16           THE COURT:  All right.

17           DEPUTY CLERK:  Juror Number 1, is the verdict as

18  read the verdict you have agreed upon?

19           JUROR NUMBER 1:  Yes it is.

20           DEPUTY CLERK:  Juror Number 3, is the verdict as

21  read the verdict you have agreed upon?

22           JUROR NUMBER 3:  Yes.

23           DEPUTY CLERK:  Juror Number 4, is the verdict as

24  read the verdict you have agreed upon?

25           JUROR NUMBER 4:  Yes.

```
 1                    DEPUTY CLERK:  Juror Number 5, is the verdict as

 2    read the verdict you have agreed upon?

 3                    JUROR NUMBER 5:  Yes.

 4                    DEPUTY CLERK:  Juror Number 6, is the verdict as

 5    read the verdict you have agreed upon?

 6                    JUROR NUMBER 6:  Yes.

 7                    DEPUTY CLERK:  Juror Number 7, is the verdict as

 8    read the verdict you have agreed upon?

 9                    JUROR NUMBER 7:  Yes.

10                    DEPUTY CLERK:  Juror Number 8, is the verdict as

11    read the verdict you have agreed upon?

12                    JUROR NUMBER 8:  Yes.

13                    DEPUTY CLERK:  Juror Number 9, is the verdict as

14    read the verdict you have agreed upon?

15                    JUROR NUMBER 9:  Yes.

16                    DEPUTY CLERK:  Juror Number 10, is the verdict

17    as read the verdict you have agreed upon?

18                    JUROR NUMBER 10:  Yes.

19                    DEPUTY CLERK:  Juror Number 11, is the verdict

20    as read the verdict you have agreed upon?

21                    JUROR NUMBER 11:  Yes.

22                    DEPUTY CLERK:  Juror Number 12, is the verdict

23    as read the verdict you have agreed upon?

24                    JUROR NUMBER 12:  Yes.

25                    DEPUTY CLERK:  Juror Number 13, is the verdict
```

1    as read the verdict you have agreed upon?

2                    JUROR NUMBER 13:  Yes.

3                    THE COURT:  All right.  Are there any other

4    requests before I discharge the jury?

5                    MS. REMIS:  No, Your Honor.

6                    MR. BOSTIC:  No, Your Honor.

7                    THE COURT:  So members of the jury, that

8    completes your service.  On behalf of the Court -- well, for

9    myself and on behalf of the court, I do want to thank you

10   for your service during these last three weeks.  You've been

11   very attentive.  You've been on time, and you've obviously

12   given the deliberations some serious thought.  So for all

13   that, I thank you.

14                   So I'm going to ask the deputy clerk to take you

15   out.  I have to talk to the lawyers for about 30 seconds,

16   but after that I'd like to come back and thank you

17   personally.  But if you are in a hurry to go somewhere or

18   don't care about being thanked, you don't have to hang

19   around for me.

20                   Okay?  All right.

21                   Can we take the jury out, please?

22                   (Jury leaving the courtroom.)

23                   THE COURT:  All right.  You can be seated.  So I

24   do need to go over and talk to the jury.  Among other

25   things, I need to find out some questions about COVID in

```
 1    terms of their comfort level, and service, and things like

 2    that.

 3              So but we do need to have a bail hearing, and so

 4    nobody leave.  I mean, the audience can leave, but don't you

 5    all leave.

 6              And Mr. Marshal, you stick around, too.  Okay?

 7    I will be back as soon as I can.

 8              DEPUTY CLERK:  All rise.

 9              (Recess was taken.)

10              DEPUTY CLERK:  All rise.

11              THE COURT:  All right.  You can be seated.

12              All right.  So is there any request for bail,

13    Mr. Bostic?

14              MR. BOSTIC:  Yes, Your Honor.  We would request

15    bail, though we understand that in a situation where we

16    have -- that bail will be subject to if there are

17    exceptional circumstances regarding Dr. Titus' matter.  At

18    this point, having been convicted of the drug offense, we do

19    believe that there are exceptional circumstances.

20              I'll start with the fact that he's been on

21    pretrial release for several years without incident.  In

22    addition, Dr. Titus suffers from hyperthyroidism, underlying

23    asthma, as well as high blood pressure.

24              We know that there is a resurgence of the virus

25    with the current strain that is going around, and he has not
```

```
 1    been vaccinated.  We believe that putting a gentleman in his
 2    age in the FDC at this time or detaining him would not be --
 3    is not necessary in spite of the need to show exceptional
 4    circumstances.
 5              We believe that he's not a flight risk and
 6    neither, in spite of the conviction, is he a danger to the
 7    community.  His record has been exceptional in terms of time
 8    on pretrial release.
 9              So we'd ask the Court to continue bail.  The
10    Court could -- to ensure -- satisfy that there will be no
11    issues, and I don't expect any, the Court could even, if the
12    Court were to so desire, place him on a home detention with
13    an electronic monitor monitoring and limiting his mobility
14    until sentencing.
15              Thank you, Your Honor.
16              THE COURT:  Thank you, Mr. Bostic.
17              Ms. Remis.
18              MS. REMIS:  The Government would move for
19    detention pursuant to 3143(a)(2).  There are very limited
20    circumstances in which a Defendant who's been convicted of
21    controlled substances offenses, as Dr. Titus has been
22    convicted, are allowed to be released pending sentencing.
23    The statute uses the word shall for the Court, and the
24    Government is of the position that there is -- that we are
25    certainly not going to recommend a sentence of no
```

```
1    imprisonment, and we do not believe there's a substantial
2    likelihood of a motion for a judgment of acquittal or a new
3    trial would be granted, although I understand we'd probably
4    litigate that issue.  And we believe that Dr. Titus should
5    be remanded immediately.
6              Additionally, as there has been some suicidal
7    ideation in the past that is part of, we understand from
8    part of the investigation, and we would just bring that to
9    the Court's attention as well.
10             MR. BOSTIC:  Your Honor, if I may just add two
11   things before the Court rules.  One is that the suicidal
12   ideation occurred over two years ago, two-and-a-half years
13   ago initially when Dr. Titus was arrested and detained, and
14   it was very short lived.
15             Second, and I'm remiss for not doing so before,
16   Defense believe that we do have very substantial grounds for
17   a new trial based upon a -- during the course of trial the
18   Court is aware that we moved for two mistrials in this case.
19   The second of which I clearly indicated to the Court that I
20   did not believe it was a triable -- I mean, it was a curable
21   offense.  I know the Court differed with my position, but
22   I'm not going to make the argument again at this time, Your
23   Honor.
24             THE COURT:  I remember what your argument was.
25             MR. BOSTIC:  And I kept making it, so I'm not
```

1      going to make it again, but I ask this Court to take all of

2      that into consideration.  And we will, obviously, move

3      through sentencing as quickly as possible so that we can,

4      indeed, litigate this, but we will be filing a motion with

5      this Court for a new trial within, I think it's seven days,

6      or seven or 14 days.

7                    THE COURT:  Okay.  Ms. Remis.

8                    MS. REMIS:  Yes, Your Honor.

9                    THE COURT:  Actually, I should ask Mr. Bostic

10     first.  The exceptional circumstances, which is something

11     that I remember from somewhere, where is that in the

12     statute?

13                   MR. BOSTIC:  If I may have a moment, Your Honor.

14     Your Honor it's -- I believe it's A.U.S.C. Section

15     3143(k)(a)(2).

16                   MS. KOUSOULIS:  (a)(2).

17                   MR. BOSTIC:  Your Honor, and it specifically

18     notes there that the Court cannot detain particularly where,

19     as in this case, there's substantial grounds for a motion --

20                   THE COURT:  No, no, no.  That part I know where

21     that is.  The exceptional circumstances --

22                   MR. BOSTIC:  Oh.

23                   THE COURT:  -- that you were relying on in your

24     opening argument, I'm trying to just remember where that is

25     because I was curious.

1                    Do you know, Ms. Remis?

2                    MS. REMIS:  Your Honor, I'm not familiar with

3        the exceptional circumstances edition or suggestion and --

4                    THE COURT:  Okay.  So I think it's actually

5        section -- maybe it's Section 3145(c).

6                    MR. BOSTIC:  Okay.

7                    THE COURT:  It says --

8                    MR. BOSTIC:  First of all, I agree with the

9        Court once you pointed us to the proper section.

10                   MS. REMIS:  Yes, I see that, Your Honor.

11                   THE COURT:  I think it says a person subject to

12       detention pursuant to 3143(a)(2) or (b)(2), and who meets

13       the conditions of release in 3143(a)(1) or (b)(1) may be

14       ordered released -- well, in any event, it says if it is

15       clearly shown there are exceptional reasons why such

16       person's detention would not be appropriate.  That's the

17       relevant thing.

18                   So in terms of exceptional reasons, I don't

19       think what the Defendant has offered are exceptional

20       reasons.  Yes, I am not concerned that Dr. Titus is a flight

21       risk, but that's not an exceptional reason.

22                   The fact that he's done well on pretrial

23       release, say spotless for two-and-a-half years, that's not

24       exceptional reason.

25                   The various medical conditions that were

1    mentioned, hyperthyroidism, high blood pressure, asthma,

2    those are not exceptional reasons, and the combination is

3    not exceptional reasons.

4              There is mention of the virus, and there is

5    mention that Dr. Titus is not vaccinated.  That's his choice

6    because after all he hasn't been locked up for the last

7    two-and-a-half years.  So I'm fairly confident, you know,

8    for some priority and saying you shouldn't send him to

9    prison because he hasn't done something he could have done

10   and that creates a greater risk, it seems to me that's

11   Dr. Titus' choice.  So I don't think there are exceptional

12   reasons.

13             In terms of Section 3143(a)(2)(a)(1), which

14   Mr. Bostic has also brought up, a substantial likelihood

15   that a motion for acquittal for a new trial will be granted,

16   presumably based on the question that we addressed on Monday

17   relating to which there's, obviously, a transcript which I

18   haven't reviewed, but basically Mr. Woodard asked something

19   like if Dr. Titus testified, and I don't think he got any

20   further than that or before all the hubbub occurred.  And I

21   believe that I addressed it promptly, and I addressed it

22   thoroughly; and therefore, I do not think there is a

23   substantial likelihood that I will grant the motion for a

24   new trial.

25             And so, therefore, I am going to remand

1      Dr. Titus into custody because I think the statute requires

2      it.  And I guess what I would say is if the virus resurrects

3      itself in the near future, I would reconsider on that ground

4      alone.  And you know, I can't predict, but right now I don't

5      think we're there.

6                  So that's my ruling.

7                  Is there anything else we need to address now,

8      Ms. Remis?

9                  MS. REMIS:  No, Your Honor.

10                 THE COURT:  All right.  Mr. Bostic?

11                 MR. BOSTIC:  No, Your Honor.

12                 THE COURT:  Okay.  So let me just -- I believe

13     we have a potential sentencing date; is that right?

14                 DEPUTY CLERK:  I have November 9th at

15     eight o'clock in the morning.

16                 THE COURT:  I take it 8:00 a.m. is because I

17     have a trial?

18                 DEPUTY CLERK:  Yeah.  You have a lot of trials

19     around that time.

20                 THE COURT:  How does -- well, you probably won't

21     be able to be here.

22                 MS. REMIS:  My colleagues will be here.  I

23     might.  Maybe I'll come out of maternity.

24                 THE COURT:  Mr. Bostic, does that date work for

25     you?

1          MR. BOSTIC:  That date works at this point, Your

2     Honor.

3          THE COURT:  Okay.  All right.

4          Okay.  So I'm going to go into recess.  I'm just

5     wondering if I could just see Ms. Remis and either

6     Mr. Bostic or Ms. Kousoulis, it doesn't matter which one,

7     but one is enough, just for a minute.  I want to ask you

8     something not on the record.

9          MS. REMIS:  Absolutely, Your Honor.

10          DEPUTY CLERK:  All rise.

11          (Court was recessed at 3:26 p.m.)

12          I hereby certify the foregoing is a true and

13     accurate transcript from my stenographic notes in the

14     proceeding.

15          /s/ Heather M. Triozzi
           Certified Merit and Real-Time Reporter
16          U.S. District Court

17

18

19

20

21

22

23

24

25